# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                    )
JACQULINE PETWAY,                   )
                                    )
                Plaintiff,          )
                                    )
        v.                          )       Civil Action No. 22-3100 (RBW)
                                    )
SANTANDER CONSUMER USA INC.,        )
Sued herein as, and doing business as )
Chrysler Capital,                   )
                                    )
                Defendant.          )
_____ )
```

## <u>MEMORANDUM OPINION</u>

In her initial Complaint, the plaintiff, Jacquline Petway, proceeding <u>pro se</u>, brings this civil action against the defendant, Santander Consumer USA Inc. d/b/a Chrysler Capital ("Chrysler Capital"), asserting what the Court construes as eight causes of action: (1) negligence; (2) trust fraud; (3) harassing phone calls; (4) conversion of a 2021 Jeep Renegade; (5) a violation of 15 U.S.C. § 1692j of the Fair Debt Collection Practices Act ("FDCPA"); (6) a violation of 15 U.S.C. § 1605 of the Truth in Lending Act ("TILA"); (7) breach of contract; and (8) a violation of 15 U.S.C. § 1611 of the TILA.  <u>See generally</u> Notice of Removal, Exhibit ("Ex.") A (Complaint (Sept. 13, 2022) ("Compl.")), ECF No. 1-2.  Currently pending before the Court are: (1) the defendant's motion to dismiss, <u>see</u> Santander Consumer USA Inc. d/b/a Chrysler Capital's Motion to Dismiss ("Def.'s Mot."), ECF No. 4; (2) the plaintiff's first motion to amend her Complaint, <u>see</u> Motion to Amend ("Pl.'s 1st Mot. to Amend"), ECF No. 12; and (3) the plaintiff's second motion to amend her Complaint, <u>see</u> Motion [f]or Leave [t]o Amend ("Pl.'s 2d

Mot. to Amend"), ECF No. 14.  Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must deny both of the plaintiff's motions to amend and grant the defendant's motion to dismiss.

## I.       BACKGROUND

### A.       Factual Background

The following allegations are derived from the plaintiff's Complaint, unless otherwise specified.[2]  "On September 24, 2021[,] [the plaintiff] [engaged in] a credit transaction with [the defendant,] Chrysler Capital[,] for [acquisition of a] 2021 Jeep Renegade."  Notice of Removal, Ex. A (Affidavit (Sept. 13, 2022) ("Aff.")) ¶ 1, ECF No. 1-2.  In June 2022, the plaintiff "made a payment [to the defendant] . . . with a remittance coupon . . . to pay [the defendant] w[hat] they said [she] owe[d] th[e]m[.]"  Id., Ex. A (Compl.) ¶ 3.  The defendant then "sent [her] a green card [in the] mail" from the defendant's CEO leading her to believe that "[b]y law [her] payment was received and [ac]cepted."  Id., Ex. A (Compl.) ¶ 3.  However, the plaintiff subsequently "received phone calls from [the defendant] har[a]ssing [her] saying a payment needed to be made or [her] truck would be repo[ssess]ed."  Id., Ex. A (Compl.) ¶ 3.  Finally, on August 12, 2020, "[the defendant] took [the plaintiff's] truck . . . after [she] atte[m]pt[ed] to settle [her] debt."  Id., Ex. A (Compl.) ¶ 3.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Santander Consumer USA Inc. d/b/a Chrysler Capital's Motion to Dismiss ("Def.'s Mem."), ECF No. 4-1; (2) Santander Consumer USA Inc. d/b/a Chrysler Capital's Notice of Additional Service of Filings Upon Plaintiff ("Def.'s Notice of Additional Service of Filings"), ECF No. 5; (3) Santander Consumer USA Inc. d/b/a Chrysler Capital's Notice of Failure to Oppose Motion and Request for Dismissal ("Def.'s Notice of Failure to Oppose"), ECF No. 7; (4) the defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Amend Complaint ("Def.'s Opp'n"), ECF No. 13; and (5) the defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Second Motion to Amend Complaint ("Def.'s 2d Opp'n"), ECF No. 15.

[2] The plaintiff attached an Affidavit to her Complaint, which she incorporates by reference into the Complaint.  See Notice of Removal, Ex. A (Compl.) ¶ 1 (stating "Please See Attachment!").

The plaintiff also asserts a variety of claims against Darcars of Waldorf, see id., Ex. A (Aff.) ¶¶ 2–7, which the defendant identifies as "a car dealership with its principal place of business at One Business Park Drive, Waldorf, Maryland[,]" Def.'s Mem. at 3; see Def.'s Mot., Ex. A (Maryland State Business Entity Search (Oct. 18, 2022) ("Business Entity Search")) at 2, ECF No. 4-2.[3]  Specifically, the plaintiff alleges (1) that "D[arcars] [of] W[aldorf] has been furnishing deceptive form[s] every month misleading [the plaintiff] to believe [she] owe[s] a debt that is already paid" in violation of 15 U.S.C. [§] 1692j, Notice of Removal, Ex. A (Aff.) ¶ 2; (2) that "the [f]inance [c]harge [was] suppose[d] to be explained conspicuously . . . [and was] suppose[d] to be the sum of all charges[,] . . . [which] . . . was [not] explained to [the plaintiff] by Darcars[,]" id., Ex. A (Aff.) ¶ 3 (emphasis omitted); (3) that "Darcars never explained the insurance section in the contract which is labeled optional [according to] 15 U.S.C. [§] 1605[,]" id., Ex. A (Aff.) ¶ 4; (4) that "Darcars has breached the contract [it had with the plaintiff] and therefore by law the contract no longer exist[s,]" id., Ex. A (Aff.) ¶ 5; and (5) that "Darcars owe[d] [the plaintiff] a duty in [r]emedy of a refund for each payment [she] made to [their] company[,]" id., Ex. A (Aff.) ¶ 7.  However, Darcars is not named as a defendant in this lawsuit, nor has the plaintiff provided any proof of service of the Complaint upon Darcars.  See generally id., Ex. A (Compl.).

The plaintiff seeks the return of the 2021 [J]eep Renegade and the title to the vehicle.  See id., Ex. A (Compl.) ¶ 2.  Additionally, the plaintiff is "also requesting [$]1,000 for every law that was broken and . . . compensation for damages and hardships due to the negligence of [the defendant]."  Id., Ex. A (Compl.) ¶ 2.

---

[3] When considering a motion to dismiss, the Court may take "judicial notice of facts on the public record[.]"  Covad Commc'ns Co. v. Bell Atl. Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005) (internal quotation marks omitted).

**B.**     **Procedural History**

On September 13, 2022, the plaintiff initiated this civil action in the Superior Court of the

District of Columbia.  See id., Ex. A (Compl.) at 1.  Subsequently, on October 12, 2022, the

defendant timely removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.  See

id. at 1.  The defendant filed its motion to dismiss on October 19, 2022, see Def.'s Mot. at 1, to

which the plaintiff has failed to file a response, see Def.'s Notice of Failure to Oppose at 1.

Based on the plaintiff's failure to respond to the motion to dismiss, the defendant filed a notice

arguing that the Court should treat the defendant's motion as conceded.  See id.  On March 24,

2023, the Court issued an Order informing the plaintiff of her obligation to oppose the

defendant's motion and the potential consequence of dismissal if she failed to oppose the motion

within the time provided by the Court.[4]  See Order at 2 (Mar. 24, 2023), ECF No. 10.

Specifically, the Court ordered that, "on or before April 20, 202[3], the plaintiff shall file her

memorandum in opposition to the defendant's motion to dismiss, if she intends to oppose the

motion[,]" and advised her that, if she failed to do so, "the Court may dismiss the plaintiff's

Complaint upon a finding that the arguments raised by the defendant in its motion are

meritorious."  Id. (citing Cohen v. Bd. of Trs. of the Univ. of D.C., 819 F.3d 476, 482–83 (D.C.

Cir. 2016)).  As of the date of the issuance of this Memorandum Opinion, the plaintiff has not

filed an opposition to the defendant's motion as she was ordered to do.

On November 16, 2023, during the pendency of the resolution of the defendant's motion

to dismiss, the plaintiff filed a document which she titled a "[m]otion [t]o [a]mend[.]"  Pl.'s 1st

Mot. to Amend at 1.  Shortly thereafter, on December 1, 2023, the defendant filed an opposition

---

[4] In the Court's March 24, 2023 Order, the Court mistakenly stated that the Complaint was filed on September 9, 2022.  See Order at 1 (Mar. 24, 2023), ECF No. 10.  Rather, as reflected by the Complaint, the plaintiff actually filed her Complaint on September 13, 2022.  See Notice of Removal, Ex. A (Compl.) at 2, 39.

to the plaintiff's motion to amend.  <u>See</u> Def.'s Opp'n at 1.  Finally, on February 20, 2024, the plaintiff filed a second motion to amend her Complaint, <u>see</u> Pl.'s 2d Mot. to Amend at 1, and, on March 6, 2024, the defendant filed another opposition in response to the plaintiff's second motion to amend, <u>see</u> Def.'s 2d Opp'n at 1.

## II.    STANDARDS OF REVIEW

### A.    Motion to Amend Pursuant to Federal Rule of Civil Procedure 15

Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course no later than [twenty-one] days after serving it, or if the pleading is one to which a responsive pleading is required, [twenty-one] days after service of a responsive pleading or [twenty-one] days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).  Moreover, "the Court [should] 'freely give leave [to amend a complaint] when justice so requires,'" <u>Henok v. Kessler</u>, 78 F. Supp. 3d 452, 457 (D.D.C. 2015) (second alteration in original) (quoting Fed. R. Civ. P. 15(a)(2)), and therefore, "[i]t is common ground that Rule 15 embodies a generally favorable policy toward amendments[,]" <u>Howard v. Gutierrez</u>, 237 F.R.D. 310, 312 (D.D.C. 2006) (quoting <u>Davis v. Liberty Mut. Ins. Co.</u>, 871 F.2d 1134, 1136–37 (D.C. Cir. 1989)).  This is because "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the plaintiff] ought to be afforded an opportunity to test [her] claim on the merits."  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). However, the Court may deny leave to amend due to "undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility."  <u>Richardson v. United States</u>, 193 F.3d 545, 548–49 (D.C. Cir. 1999).  Indeed, "[a] motion to amend [a c]omplaint should be denied as futile if the complaint as amended could not survive a motion to dismiss." <u>Black v. Nat'l Football League Players Ass'n</u>, 87 F. Supp. 2d 1, 6 (D.D.C. 2000) (first alteration

in original) (internal quotation marks omitted).

**B.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint

that "fail[s] to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   In

evaluating a motion to dismiss based on this Rule, the Court must "treat the complaint's factual

allegations as true and must grant [the] plaintiff the benefit of all inferences that can be derived

from the facts alleged."   Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir.

2000) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009).  The Court need not accept as true, however "a legal conclusion couched as a factual

allegation," nor an "inference[] unsupported by the facts set out in the complaint."   Trudeau v.

Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006).  Although "detailed factual

allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as

true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (internal

quotation marks omitted).  Although a plaintiff may survive a Rule 12(b)(6) motion even if

"recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to

raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555–56.  In assessing

the sufficiency of a complaint, the Court "may consider only the facts alleged in the complaint,

any documents either attached to or incorporated in the complaint[,] and matters of which [the

Court] may take judicial notice."  Equal Emp. Opportunity Comm'n v. St. Francis Xavier

Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**C.      Pro Se Plaintiff**

In applying the above standards of review, the Court must take into consideration the fact

that the plaintiff is proceeding in this matter <u>pro se</u>.  The plaintiff's self-representation is

noteworthy because the pleadings of <u>pro se</u> parties are "to be liberally construed, and a <u>pro se</u>

complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers."   <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal quotation

marks and citations omitted).   Furthermore, "all filings by [a <u>pro se</u> plaintiff] should be read

together in assessing whether [her C]omplaint[] should be dismissed[,]" <u>Khatri v. Bd. of Trs. of</u>

<u>Univ. of D.C.</u>, No. 19-cv-2644 (RBW), 2021 WL 2403087, at *6 (D.D.C. June 11, 2021)

(Walton, J.), although a "<u>pro se</u> complaint, like any other, must present a claim upon which relief

can be granted by the [C]ourt[,]" <u>Crisafi v.Holland</u>, 655 F.2d 1305, 1308 (D.C. Cir. 1981).  In

addition, a <u>pro se</u> litigant "must comply with the Federal Rules of Civil Procedure and this

Court's local rules[.]" <u>Hedrick v. Fed. Bureau of Investigation</u>, 216 F. Supp. 3d 84, 93 (D.D.C.

2016) (citations omitted); <u>see</u> <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) ("[W]e have

never suggested that procedural rules in ordinary civil litigation should be interpreted so as to

excuse mistakes by those who proceed without counsel.").

### III.     ANALYSIS

As the Court noted above, the plaintiff has filed what she has styled as motions to amend

her Complaint.  However, the motions were filed well past both the deadlines for (1) amending a

complaint as a matter of right, <u>see</u> Fed. R. Civ. P. 15(a)(1), and (2) responding to the defendant's

motion to dismiss, <u>see</u> Local Civ. R. 7(b); Order at 2 (Mar. 24, 2023) (ordering the plaintiff to

respond to the defendant's motion to dismiss by April 20, 2023).  Thus, the Court will first

address whether it should grant the plaintiff leave to amend her Complaint.  Because the Court

first concludes that leave to amend the Complaint should not be granted, the Court will then

proceed to an analysis of whether the defendant's motion to dismiss is meritorious.[5]

## A.     Whether the Plaintiff Should be Granted Leave to Amend her Complaint

The Court first considers whether the plaintiff should be granted leave to amend her Complaint.[6]   Pursuant to Rule 15, a plaintiff can amend her complaint once as a matter of course within "[twenty-one] days after service of a motion under Rule 12(b)[.]"  Fed. R. Civ. P. 15(a)(1)(B).  Otherwise, "a [plaintiff] may amend [her] pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  While "[t]he [C]ourt should freely give leave [to amend] when justice so requires[,]"  Fed. R. Civ. P. 15(a)(2), a plaintiff must still "comply with the law of this circuit by filing a motion for leave to amend her complaint and attaching [with it] a proposed amended complaint[,]" Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 130 (D.C. Cir. 2012); see also Local Civ. R. 15.1 ("A motion for leave to file an amended pleading shall attach, as an exhibit, a copy of the proposed pleading as amended.").  Additionally, before a party "fil[es] any nondispositive motion[,] . . . counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought[.]"  Local Civ. R. 7(m).  "The duty to confer also applies to [ ] parties appearing pro se."  Id.

Here, for several reasons, the plaintiff's second motion to amend does not "comply with

---

[5] In light of the plaintiff's failure to file an opposition, the Court can consider the defendant's motion as conceded.  See Local Civ. R. 7(b) ("If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded."); General Order for Civil Cases Before the Honorable Reggie B. Walton ¶ 5(e), ECF No. 9 ("If a party fails to oppose a motion, the Court may treat the motion as conceded."); Order at 2 (Mar. 24, 2023).  However, "the [C]ourt takes into account that the plaintiff is [ ] acting pro se and should therefore . . . [ ] afford[ her] some latitude in maneuvering the judicial process."  Allen v. United States, 277 F.R.D. 221, 224 (D.D.C. 2011) (citing Moore v. Agency for Int'l Dev., 994 F.2d 874, 876 (D.C. Cir. 1993)).  Thus, although the plaintiff has effectively conceded the defendant's motion, the Court will nonetheless assess the merits of the defendant's arguments for dismissal.

[6] Because the plaintiff has filed two motions to amend her Complaint, the Court denies the plaintiff's first Motion to Amend, ECF No. 12, as moot.

the law of this circuit[.]" Rollins, 703 F.3d at 130. [7]  First, the plaintiff's motion does not comply

with the Local Rule requiring "[a] motion for leave to file an amended pleading [to] attach, as an

exhibit, a copy of the proposed pleading as amended."  Local Civ. R. 15.1; see Pl.'s 2d Mot. to

Amend.  Instead, without seeking leave of the Court,[8] the plaintiff simply titles her pleading a

"Motion [f]or Leave [t]o Amend[,]" Pl.'s 2d Mot. to Amend at 1, and proceeds with a statement

of factual allegations that appear to supplement allegations asserted in her Complaint regarding

the repossession of her vehicle, see generally id.  Accordingly, although the Court is encouraged

to "freely give leave [to amend a complaint] when justice so requires," Fed. R. Civ. P. 15(a)(2),

doing so in this instance would be antithetical to that requirement where the plaintiff's motion

lacks "any indication of the particular grounds on which amendment is sought[, and arguably,

]does not constitute a motion within the contemplation of Rule 15(a)[,]" Rollins, 703 F.3d at 130.

Next, the motion to amend is futile because the plaintiff has failed to plead "sufficient

factual matter, [even if] accepted as true, to state a claim to relief that is plausible on its face."

Iqbal, 556 U.S. at 678 (internal quotation marks omitted); see also Black, 87 F. Supp. 2d at 6 ("A

motion to amend [a c]omplaint should be denied as futile if the complaint as amended could not

survive a motion to dismiss.").  To reiterate, "[w]hen evaluating whether to grant leave to amend,

---

[7] The Court also questions whether the plaintiff's filing should be construed as a motion to amend considering its significant deficiencies and non-compliance with the requirements for the filing of motions under the Local Rules. See, e.g., Superior Fibre Prod., Inc. v. United States Dep't of the Treasury, 156 F. Supp. 3d 54, 63 (D.D.C. 2016) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." (quoting Rollins, 703 F.3d at 130)).  Again, because the plaintiff is proceeding pro se, her filings are "to be liberally construed, . . . however inartfully pleaded[, and] must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (internal quotation marks and citations omitted).

[8] The plaintiff also failed to confer with the defendant before filing her motion to amend her Complaint, which alone could be grounds for its denial.  See Ellipso, Inc. v. Mann, 460 F. Supp. 2d 99, 102 (D.D.C. 2006) ("If a party files a nondispositive motion without certifying its compliance with Rule 7(m), the motion will be denied."); see also Local Civ. R. 7(m) (explicitly acknowledging that "[t]he duty to confer also applies to [ ] parties appearing pro se").  However, even though the Court ultimately concludes that the plaintiff's motion to amend does not comply with the Local Rules, is futile, and unduly prejudicial to the defendant, because of the plaintiff's pro se status, the Court will nonetheless address the merits of her second motion to amend her complaint.

the Court must consider (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint." Howell v. Gray, 843 F. Supp. 2d 49, 54 (D.D.C. 2012).  In her motion to amend, the plaintiff identifies for the first time Collections Transport Impound Towing ("Collections Towing"), who she alleges "was acting . . . at [the defendant's] [b]ehest[,]"  Pl.'s 2d Mot. to Amend ¶ 19, when it repossessed her vehicle, see id. ¶ 2.  However, the plaintiff does not explain how, or if, the alleged harm caused by Collections Towing should be imputed to Chrysler Capital, and therefore, fails to provide Chrysler Capital "fair notice of what the . . . claim[s are against it] and the grounds upon which [they] rest[]."  Jones v. Changsila, 271 F. Supp. 3d 9, 21 (D.D.C. 2017) (internal quotation marks omitted); see Trudeau, 456 F.3d at 193 (acknowledging that courts are not bound to "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint").  While the plaintiff does allege that "Collections . . . Towing was acting at . . . Chrysler Capital['s] [b]ehest[,]"  Pl.'s 2d Mot. to Amend ¶ 19, when her car was repossessed, she does not allege facts that allow the Court to draw an inference of liability against the defendant based on the alleged conduct of Collections Towing.  See generally Pl.'s 2d Mot. to Amend.  Accordingly, the plaintiff's motion "would not survive a motion to dismiss[,]"  Henok, 78 F. Supp. 3d at 457.

Finally, the plaintiff also does not adequately explain the undue delay in filing her motion to amend and why the Court should overlook the potential prejudice to the defendant.  "Courts that have found an undue delay in filing [a proposed amended complaint] have generally confronted cases in which the movants failed to promptly allege a claim for which they already possessed evidence."  United States ex rel. Westrick v. Second Chance Body Armor, Inc., 301 F.R.D. 5, 9 (D.D.C. 2013); but see Atchinson v. District of Columbia, 73 F.3d 418, 426 (D.C.

Cir. 1996) ("[c]onsideration of whether delay is undue, however, should generally take into account the actions of other parties and the possibility of any resulting prejudice.").  "An amendment would be unduly prejudicial if it 'substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation'; it would 'put [the opponent] to added expense and the burden of a more complicated and lengthy trial'; or it raises 'issues . . . [that] are remote from the other issues in the case.'"  United States ex rel. Scott v. Pac. Architects and Eng'rs (PAE) Inc., 327 F.R.D. 17, 20 (D.D.C. 2018) (alterations in original) (quoting Djourabchi v. Self, 240 F.R.D. 5, 13 (D.D.C. 2006)).

Here, the plaintiff seeks to add supplemental facts and parties regarding the events surrounding the repossession of her vehicle, see generally Pl.'s 2d Mot. to Amend, but she "failed to promptly allege [these] claim[s] for which [she] already possessed evidence." Westrick, 301 F.R.D. at 9.  In her original Complaint, the plaintiff alleged that "Chrysler Capital took [the] truck on [August 12, 2020],"[9] Notice of Removal, Ex. A (Compl.) ¶ 3, without any mention of Collections Towing, see generally id., Ex. A (Compl.).  The Court also notes that since the defendant filed its motion to dismiss, the plaintiff has blatantly ignored opportunities afforded to her to allege facts she has waited well over a year to finally assert.  See Order at 2 (Mar. 24, 2023) (ordering the plaintiff to respond to the defendant's motion to dismiss); Pl.'s 1st Mot. to Amend at 1 (alleging additional harm against Darcars on November 16, 2023, but not at all mentioning Chrysler Capital or Collections Towing); Pl.'s 2d Mot. to Amend (alleging harm

---

[9] The plaintiff's proposed amended Complaint raises an additional concern, as she contends, for the first time, that her vehicle was repossessed on a date nearly two years after the date she pleaded in her original Complaint. Compare Pl.'s 2d Mot. Amend ¶ 17 ("In the evening of [June 10th], 2022, the [p]laintiff was alerted to a sound of a [t]ruck [p]ulling up outside of her window."), with Notice of Removal, Ex. A (Compl.) ¶ 3 ("[the defendant] [t]ook [m]y [t]ruck on 8/12/2020, [a]fter [m]y [a]ttempt [t]o settle [a] [d]ebt.").

against Collections Towing on February 20, 2024, but none against Darcars).  Because the plaintiff does not explain why she "failed to promptly allege [these] claim[s] for which [she] already possessed evidence[,]"  Westrick, 301 F.R.D. at 5, the Court concludes that the amendment is unduly delayed and it would be "unduly prejudicial . . . [to] require [the defendant] to engage in significant new preparation[,]" Scott, 327 F.R.D. at 20, in responding to supplemental factual allegations and claims concerning the same nucleus of events, see McGee v. District of Columbia, 646 F. Supp. 2d 115, 121 (D.D.C. 2009) (holding that "[t]he fact that claims [added] in an amended complaint are based on the same legal duties or facts asserted in the original complaint is grounds for denying leave to amend").

For all the above-stated reasons, the Court must deny the plaintiff's second motion for leave to amend her complaint.

**B.     The Defendant's Motion to Dismiss**

Having denied the plaintiff's motions for leave to amend her Complaint, the Court will now consider the defendant's motion to dismiss the plaintiff's original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Construing the Complaint most favorably to the plaintiff, as the Court noted earlier, it appears she has attempted to assert eight causes of action: (1) negligence; (2) trust fraud; (3) harassing phone calls; (4) conversion of a 2021 Jeep Renegade; (5) a violation of § 1692j of the FDCPA; (6) a violation of § 1605 of the TILA; (7) a violation of 15 U.S.C. § 1611; and (8) breach of contract.  See Notice of Removal, Ex. A (Compl.); id., Ex. A (Aff.); see also Erickson, 551 U.S. at 94 (explaining that courts are to liberally construe pleadings of pro se parties).  The defendant moves to dismiss the plaintiff's Complaint pursuant to Rule 12(b)(6), alleging that the plaintiff (1) failed to put the defendant on notice of the claims against it, and (2) failed to include any cognizable cause of action.  See

Def.'s Mem. at 3–4.  The defendant also argues that the plaintiff has conceded the motion to dismiss by "fail[ing] to file a memorandum opposing [the] motion."  Def.'s Notice of Failure to Oppose at 1.

In greater detail, in the memorandum submitted with its motion, the defendant argues that: (1) the "[p]laintiff has failed to plead any elements of a negligence claim," Def.'s Mem. at 5, (2) the "[p]laintiff has not pleaded this novel form of 'fraud' with particularity, as would be required by Fed. R. Civ. P. 9(b)," id. at 6, (3) the "[p]laintiff has not pleaded sufficient facts to permit this Court to assume or infer that Chrysler Capital's alleged repossession of her vehicle— assuming it happened in the first place—was unlawful and denied [the p]laintiff her rights," id. at 8–9, (4) dismissal of the plaintiff's harassing phone calls claim is "appropriate," id. at 6, (5) the "[p]laintiff has not pleaded facts sufficient to support an FDCPA claim (or TILA claim)," id. at 7, and (6) "the [p]laintiff's Complaint . . . refers to a criminal statute–15 U.S.C. § 1611–which she has no authority to enforce and which does not grant a private right of action[,]"  id. at 4 n.5. The Court will address each of the defendant's arguments in turn before turning to the plaintiff's breach of contract claim that the defendant does not directly address.

### 1.  The Plaintiff's Negligence Claim

First, the plaintiff requests "compensation for damages and hardships due to the negligence of Chrysler Capital."  Notice of Removal, Ex. A (Compl.) ¶ 2.  In its motion to dismiss, the defendant argues that the plaintiff has "failed to plead any of the elements of a negligence claim," Def.'s Mem. at 5, because she has not alleged a "duty on the part of Chrysler Capital, let alone a breach of that duty[,]" id., and "[f]urthermore, the Complaint lacks allegations suggesting that Chrysler Capital's breach of duty—whatever it allegedly was— actually and proximately caused [the p]laintiff to incur damages[,]" id.

Under District of Columbia law, a plaintiff asserting a claim of negligence must establish

that "[(1)] a duty of care [was] owed by the defendant to the plaintiff[; that there was (2)] a breach of that duty by the defendant[;] and [that (3)] damage to the interests of the plaintiff [was (4)] proximately caused by the breach." District of Columbia v. Cooper, 483 A.2d 317, 321 (D.C. 1984). "The foundation of modern negligence law is the existence of a duty owed by the defendant to the plaintiff. Negligence is a breach of duty; if there is no duty, there can be no breach, and hence no negligence." N.O.L. v. District of Columbia, 674 A.2d 498, 499 n.2 (D.C. 1995) (citing Palsgraf v. Long Island R.R. Co., 248 N.Y. 339 (1928)). Thus, "[o]ne of the essential elements of a cause of action in negligence is that the conduct complained of invaded some interest of the plaintiff which, by virtue either of statute or of the common law, is entitled to protection as against the defendant." Wooldridge Mfg. Co. v. United States, 235 F.2d 513, 513 (D.C. Cir. 1956). Because the existence of a legal duty is an essential element of a negligence claim under District of Columbia law, the plaintiff "must specify a negligent act and characterize the duty whose breach might have resulted in negligence liability." District of Columbia v. White, 442 A.2d 159, 162 (D.C. 1982) (internal quotation marks omitted). And, a complaint alleging negligence may not rest on mere "conclusory assertions" as to the existence of any element of the claim, including the duty element. Id. at 162.

Here, the plaintiff has failed to establish the first element of a negligence claim because she has not demonstrated that the defendant owed her any legally recognized duty. In her Complaint, the plaintiff only references the word negligence, stating that she is "requesting . . . compensation for damages and hardships due to the negligence of [the defendant]." Notice of Removal, Ex. A (Compl.) ¶ 2. This reference does not "state a claim to relief that is plausible on its face[,]" Twombly, 550 U.S. at 570, as a plaintiff is required to "furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[,]'" Dougherty v.

United States, 156 F. Supp. 3d 222, 230 (D.D.C. 2013) (quoting Busby v. Capital One, N.A., 932

F. Supp. 2d 114, 133 (D.D.C. 2013)), but rather must allege facts sufficient to survive a motion

to dismiss a negligence claim, see Magee v. American Inst. of Certified Pub. Accts., 245 F.

Supp. 3d 106, 113–14 (D.D.C. 2017) (Walton, J.), (recognizing that a plaintiff "must specify a

negligent act and characterize the duty whose breach might have resulted in negligence liability"

(internal quotation marks omitted)).  Consequently, the Court concludes that the plaintiff has

"state[d] no facts supporting the existence of a fiduciary or any other relationship which might

give rise to a duty of care."  Busby, 932 F. Supp. 2d at 146.  See Woods v. District of Columbia,

63 A.3d 551, 552–53 (D.C. 2013) (noting that "[t]o survive a motion to dismiss, a complaint

must set forth sufficient facts to establish the elements of a legally cognizable claim").

Therefore, as to the plaintiff's claim of negligence asserted against the defendant, the claim must

be dismissed.  See Trifax Corp. v. District of Columbia, 53 F. Supp. 2d 20, 29 (D.D.C. 1999)

(applying District of Columbia law and granting a defendant's motion to dismiss

a negligence claim where the plaintiff could not demonstrate the existence of a duty); see also

Magee, 245 F. Supp. 3d at 114 (dismissing negligence claim for, among other reasons, the failure

to state a claim because the plaintiff failed to establish the existence of a legal duty between him

and a professional membership to which he was a member).

### 2.  The Plaintiff's Trust Fraud Claim

Second, the plaintiff alleges her "payment back in June 2022 with a remittance coupon [ ]

was to pay Chrysler Capital w[hat] they said [she] owe[d] them, [and it was,] according to the

law[,] [ ] illegal [ ] double dip[ping, and that] [ ] is trust fraud."  Notice of Removal, Ex. A

(Compl.) ¶ 3.  In response, the defendant argues that the plaintiff "has not pleaded this novel

form of 'fraud' with particularity, as [ ] required by [Federal Rule of Civil Procedure] 9(b)," and

accordingly, asserts that dismissal is warranted.  Def.'s Mem. at 6.  Specifically, the defendant

notes that "[t]here are no statutes or reported decisions from the federal courts, [the] Superior

Court [of the District of Columbia], or . . . the District of Columbia [Court of Appeals] referring

to a cause of action for 'trust fraud.'" Id. at 5–6.  The defendant further moves to dismiss this

claim on the ground that the plaintiff "has not pleaded this novel form of 'fraud' with

particularity, as [is] required by Fed. R. Civ. P. 9(b), having omitted any details about her alleged

communications with Chrysler Capital, including the requisite 'time, place, and content of the

false representations, the fact misrepresented and what was retained or given up as a

consequence of the fraud.'" Id. at 6 (quoting Morris v. Carter Glob. Lee, Inc., 997 F. Supp. 2d

27, 43 (D.D.C. 2013)).

"Under District of Columbia law, an allegation of fraud must include the following

essential elements: (1) a false representation, (2) concerning a material fact, (3) made with

knowledge of its falsity, (4) with the intent to deceive, and (5) upon which reliance is placed."

Acosta Orellana v. CropLife Int'l., 711 F. Supp. 2d 81, 96 (D.D.C. 2010) (Walton, J.) (internal

quotation marks omitted).  Fraud claims are subject to the heightened pleading requirement of

Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "The rule

serves to 'discourage[] the initiation of suits brought solely for their nuisance value, and

safeguards potential defendants from frivolous accusations of moral turpitude.'" United States

ex rel. Heath v. AT&T, Inc., 791 F.3d 112, 123 (D.C. Cir. 2015) (alteration in original) (quoting

United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256 (D.C. Cir.

2004)).  Further, "the complaint must be particular enough to 'guarantee all defendants sufficient

information to allow for preparation of a response.'" Id. (quoting Williams, 389 F.3d at 1256).

"Rule 9(b) is not an antithesis of Rule 8(a)'s 'short and plain statement' requirement, but rather a

supplement to it." <u>Baker v. Gurfein</u>, 744 F. Supp. 2d 311, 315 (D.D.C. 2010) (Walton, J.) (citing

<u>Williams</u>, 389 F.3d at 1256).  Therefore, to survive a motion to dismiss, a complaint pleading

fraud must "state the time, place and content of the false misrepresentations, the fact

misrepresented and what was retained or given up as a consequence of the fraud . . . [and must]

identify individuals allegedly involved in the fraud."  <u>Williams</u>, 389 F.3d at 1256.

Again, because the plaintiff is proceeding <u>pro se</u>, the Court must hold her complaint "to

less stringent standards than formal pleadings drafted by lawyers[.]"  <u>Haines v. Kerner</u>, 404 U.S.

519, 520 (1972).  Therefore, even when a claim of fraud is pleaded, the Court is required to

"construe [the] <u>pro se</u> [complaint] liberally[,]" <u>Richardson</u>, 193 F.3d at 548, and can only dismiss

the <u>pro se</u> complaint for failure to state a claim upon which relief can be granted if "it appears

beyond doubt that the plaintiff can prove no set of facts in support of [her] claim that would

entitle [her] to relief[,]'" <u>Sparrow</u>, 216 F.3d at 1117 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41,

45–46 (1957); <u>see</u> <u>Price v. Phoenix Home Life Ins., Co.</u>, 44 F. Supp. 2d 28, 31 (D.D.C. 1999)

(acknowledging that "although a court should read a <u>pro se</u> plaintiff's complaint liberally, a <u>pro

se</u> plaintiff must at least meet a minimal standard of pleading in the complaint").  Nonetheless,

some degree of particularity regarding a claim of fraud must be pled even by a <u>pro se</u> litigant to

satisfy Rule 9(b).  <u>See, e.g.</u>, <u>Lewis v. Full Sail, LLC</u>, 266 F. Supp. 3d 320, 325 (D.D.C. 2017)

(holding that a <u>pro se</u> plaintiff failed to state a claim of fraud because he did not plead with

particularity the circumstances constituting fraud).

Here, the plaintiff's <u>pro se</u> Complaint, even when held to a less stringent standard than

pleadings drafted by attorneys, fails to satisfy the requirements of Rule 9(b).  While the plaintiff

alleges that the defendant's assertion that she "owe[d] th[e]m" money was "illegal" and

constituted "trust fraud," Notice of Removal, Ex. A (Compl.) ¶ 3, she fails to allege the time,

place, content, or any of "the circumstances constituting [the alleged] fraud[,]" Acosta Orellana, 711 F. Supp. 2d at 96, or the false misrepresentation necessary to adequately allege a claim of fraud, see Notice of Removal, Ex. A (Compl.) ¶ 3.  The plaintiff has also failed to state "what was retained or given up as a consequence of such fraud."  Williams, 389 F.3d at 1256; see Notice of Removal, Ex. A (Compl.); see also id. Ex. A (Aff.).  Accordingly, the Court concludes that the plaintiff has failed to state a claim for trust fraud, even if such a claim can be pleaded, and thus, the claim must be dismissed.  See Busby, 932 F. Supp. 2d at 140 (dismissing the pro se plaintiff's fraud claim where "[the plaintiff]'s failure to plead her fraud and intentional misrepresentation claim against [the defendant in that case] with sufficient specificity warrant[ed] dismissal of that claim"); see also Williams, 389 F.3d at 1256 (explaining that to survive a motion to dismiss, a complaint pleading fraud must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud . . . [and must] identify individuals allegedly involved in the fraud").

### 3. The Plaintiff's Conversion Claim

Third, although the plaintiff does not explicitly allege that her vehicle was converted, the defendant construes her request for the return of the 2021 Jeep Renegade, see Notice of Removal, Ex. A (Compl.) ¶ 2 ("[The plaintiff is] requesting the 2021 [J]eep Renegade and the title[ to the vehicle]."), as a conversion and accordingly seeks dismissal of this claim on several grounds.  First, the defendant argues that the "[p]laintiff's property cannot be converted unless that act of taking possession is 'unlawful' and 'in denial or repudiation of [the owner's] rights thereto[,]'" Def.'s Mem. at 8 (citing Busby v. Capital One, N.A., 772 F. Supp. 2d 268, 280 (D.D.C. 2011)), and here "[t]he Complaint does not include any factual allegations that the [p]laintiff owned the vehicle in question free and clear of any liens or encumbrances[,]" id.  The defendant also asserts that the "[p]laintiff has not pleaded sufficient facts to permit this Court to

assume or infer that [the defendant]'s alleged repossession of her vehicle—assuming it happened in the first place—was unlawful and denied [the p]laintiff her rights." Id. at 8–9.

District of Columbia law recognizes a claim for conversion "when a defendant has unlawfully exercised 'ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto.'" Kaempe v. Myers, 367 F.3d 958, 964 (D.C. Cir. 2004) (quoting Shea v. Fridley, 123 A.2d 358, 361 (D.C. 1956)).  "One may be liable for conversion to a person who is in possession of property or who has the right to immediate possession of the property." Curaflex Health Servs., Inc. v. Bruni, 877 F. Supp. 30, 32 (D.D.C. 1995).  "Where the defendant's initial possession is lawful, the long-settled rule is that in the absence of other facts and circumstances independently establishing conversion, a demand for return is necessary to show the adverse nature of the possession." Furash & Co. v. McClave, 130 F. Supp. 2d 48, 58 (D.D.C. 2001) (citing Fridley, 123 A.2d at 361).  "Even where [a] defendant's initial possession of property is lawful, demand for its return by a plaintiff may render continued possession unlawful and show its adverse nature." Calvetti v. Antcliff, 346 F. Supp. 2d 92, 106 (D.D.C. 2004) (citing Savoy Constr. Co. v. Atchison & Keller, Inc., 388 A.2d 1221, 1223 (D.C. 1978)).  Additionally, Section 341 of Title 16 of the District of Columbia Municipal Regulations sets forth the duties of a title holder upon repossession of a vehicle.  See generally D.C. Mun. Regs. tit. 16, §§ 341.1, 341.3 (2013).  It specifies—among other things—that, if the default leading to repossession "'consists solely of the buyer's failure to make one (1) or more installment payments due under the instrument of security, and the default is not more than fifteen (15) days past due, then the holder must deliver,' at least 'ten (10) days before any motor vehicle is repossessed, . . . a written notice of the holder's intention to repossess the vehicle.'" Trazell v. Wilmers, 975 F. Supp. 2d 133, 145 (D.D.C. 2013) (quoting D.C. Mun. Regs. tit. 16,

§§ 341.1, 341.3 (2013)).

Here, the plaintiff's conversion claim relates to her allegation that she made a "payment" to the defendant in June 2022, that the defendant "received and [accepted]" that payment, and that "[the defendant] took [her] truck after [her] attempt to settle a debt." Notice of Removal, Ex. A (Compl.) ¶ 3. While the plaintiff claims that "[the defendant] took [her] truck on [August 12, 2020], after [her] attempt to settle a debt," id., Ex. A (Compl.) ¶ 3, she has not provided facts to support the legal conclusion that her vehicle was unlawfully repossessed. Nor does the plaintiff allege that she made a demand for return of her truck, assuming it was repossessed unlawfully, see generally id., Ex. A (Compl.) ¶ 3; id., Ex. A (Aff.), which is necessary in the District of Columbia to adequately allege a conversion claim, see Fridley, 123 A.2d at 361 (dismissing conversion claim because plaintiff failed to allege demand for return or show other facts sufficient to establish a conversion independent of any demand); see also Furash, 130 F. Supp. 2d at 58 ("a demand for return is necessary to show the adverse nature of the possession."). Consequently, because the plaintiff has not demonstrated that the defendant unlawfully exercised control over her vehicle, and that she has not made a demand for the return of the vehicle, the plaintiff's conversion claim must be dismissed. See Trazell, 975 F. Supp. 2d at 146 (dismissing an unlawful repossession claim where "[a]lthough [the] plaintiff claims that his vehicle was unlawfully repossessed, he does not provide facts to support the legal determination that his vehicle was unlawfully repossessed" (emphasis omitted)); See also Fridley, 123 A.2d at 361.

### 4. The Plaintiff's Harassing Phone Calls Claim

Next, the plaintiff contends that after her "payment was received and [accepted,]" she "[r]ecieved phone calls from [Chrysler Capital] har[a]ssing [her] saying a payment needed to be made or [her] truck would be repo[ssess]ed." Notice of Removal, Ex. A (Compl.) ¶ 3. The

defendant asserts that this claim should be dismissed because the "[p]laintiff has not made any allegation that [the defendant]'s alleged phone calls rise to [the] level of indecency [required by the District of Columbia Court of Appeals in <u>Sterling Mirror of Maryland, Inc. v. Gordon</u>, 619 A.2d 64 (D.C. 1993),]" Def.'s Mem. at 7, as "mere phone calls to collect a debt 'do not support such a claim' under [District of Columbia] [consumer protection] law[s,]" Def.'s Mem. at 7 (quoting <u>Sterling Mirror</u>, 619 A.2d at 67). Specifically, the defendant argues that in <u>Sterling Mirror</u>, "[t]he [District of Columbia] Court of Appeals held that the plaintiff was not entitled to relief under the FDCPA, D.C. Consumer Credit Protection Act, or common law." <u>Id.</u> at 6.

To the extent that the plaintiff is making a claim of harassing phone calls under the FDCPA by alleging that a debt collector was "har[a]ssing [her by] saying a payment needed to be made[,]" Notice of Removal, Ex. A (Compl.) ¶ 3, the plaintiff has failed to plead sufficient facts to adequately assert such a claim. Under § 1692d of the FDCPA, a debt collector "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt[,]" including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d. In other words, the FDCPA designates that debt collectors "may not use or threaten violence[] or make repetitive annoying phone calls." <u>Obduskey v. McCarthy & Holthus LLP</u>, 139 S. Ct. 1029, 1036 (2019) (indicating the definition of a "debt collector," their limited purpose, and what behaviors they are prohibited from doing); <u>see also</u> 15 U.S.C. § 1692d.

However, the plaintiff has not adequately alleged that the defendant is a debt collector within the meaning of the FDCPA. <u>See</u> <u>Avila v. CitiMortgage, Inc.</u>, 45 F. Supp. 3d 110, 120 (D.D.C. 2014) (Walton, J.) ("[T]he law is well-settled . . . that creditors, mortgagors, and

mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the [Fair Debt Collection Practices Act]." (second alteration in original)).  Accordingly, even accepting as true the plaintiff's allegations that "[the defendant] har[a]ss[ed] [her] saying a payment needed to be made," Notice of Removal, Ex. A (Compl.) ¶ 3, the FDCPA does not apply to the defendant because the plaintiff has not adequately shown that the defendant is a debt collector under the Act, see Sterling Mirror, 619 A.2d at 66 ("[the FDCPA] covers the activities of collection agents working on behalf of third parties, rather than those of creditors attempting to collect debts owed to them directly by debtors[.]").

Assuming arguendo that the plaintiff is making a claim of harassing phone calls under the District of Columbia Consumer Credit Protection Act, the plaintiff has also failed to plead sufficient facts to establish this claim.  The District of Columbia Consumer Credit Protection Act is "limited by its terms to 'actions to enforce rights arising from a consumer credit sale or a direct installment loan.'"  Id. at 67 (quoting D.C. Code § 28–3801 (1991)).  The plaintiff has not alleged facts in her Complaint that show whether these alleged harassing phone calls from defendant Chrysler Capital involve a consumer credit sale or a direct installment loan.  See generally Notice of Removal, Ex. A (Compl.); id., Ex. A (Aff.).  Although the plaintiff does allege that "[she] did a credit transaction with Chrysler Capital for [the] 2021 Jeep Ren[e]gade[,]" id., Ex. A (Aff.) ¶ 1, she goes on to allege that it was Darcars that "misle[d] [her] to believe [she] owed a debt that [wa]s already paid[,]" id., Ex. A (Aff.) ¶ 2, making it unclear from which entity she received the harassing calls.  Furthermore, the plaintiff's allegations do not plausibly state a claim under the District of Columbia consumer protection laws where a phone call to collect a debt, without more, "do[es] not support [ ] a claim [under the District of Columbia Consumer Credit Protection Act.]"  Sterling Mirror, 619 A.2d at 67.  Thus, the plaintiff does not allege "sufficient

factual matter, [even if] accepted as true, to state a claim to relief [under the District of Columbia Consumer Credit Protection Act] that is plausible on its face."  Iqbal, 556 U.S. at 678 (internal quotation marks omitted).

Accordingly, the Court concludes that the plaintiff has failed to state a claim for harassing phone calls under either the FDCPA or the District of Columbia Consumer Credit Protection Act, and therefore, the plaintiff's harassing phone calls claim must be dismissed.

**5.  The Plaintiff's FDCPA Claim**

The plaintiff next alleges that "D[arcars of Waldorf] has violated [her rights under the law] . . . in accordance with United States Code[] 15 U[.]S[.]C[. §] 1692j [by f]urnishing [her] deceptive forms."  Notice of Removal, Ex. A (Aff.) ¶ 2.  The defendant seeks dismissal of the plaintiff's Fair Debt Collection Practices Act claim for three reasons.  First, it argues that "the Supreme Court's Henson [v. Santander Consumer USA Inc., 582 U.S. 79 (2017)] decision forecloses any FDCPA claim against [the defendant] because [it] is not a 'debt collector' subject to that act."  Def.'s Mem. at 9.  Second, the defendant alleges that the "[p]laintiff's Complaint lacks allegations to support any of the other elements necessary to state a claim under [§] 1692j of the FDCPA."  Id.  Lastly, it alleges that the "[p]laintiff's Complaint and Affidavit suggest that Darcars—not Chrysler Capital—is the actual violator of the FDCPA."  Id. at 9–10.

"The [Fair Debt Collection Practices Act] is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices[,]" and it "authorizes any aggrieved person to recover damages from 'any debt collector who fails to comply with any provision' of the FDCPA."  Marx v. Gen. Revenue Corp., 568 U.S. 371, 374 n.1 (2013) (internal citations omitted).  "The [FDCPA] . . . imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices."  Jerman v. Carlisle, 559 U.S. 573, 576 (2010) (alteration in original).  Under the FDCPA, "[a 'debt collector' is any person in any business 'the principal

purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due asserted to be owed or due another.'" Hardy v. N. Leasing Sys., Inc., 953 F. Supp. 2d 150, 159-60 (D.D.C. 2013) (quoting 15 U.S.C. § 1692a(6)). "Excluded from the FDCPA's coverage is activity that 'concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.'" Id. (quoting 15 U.S.C. § 1692a(6)(F)(iv)). Moreover, the "law is well-settled . . . that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA[.]" Keeton v. Countrywide Home Loans, Inc., 217 F. Supp. 3d 177, 182 (D.D.C. 2016) (omission in original) (emphases omitted) (quoting Scott v. Wells Fargo Home Mortg. Inc., 326 F. Supp. 2d 709, 718 (E.D. Va. 2003), aff'd, 67 F. App'x 238, 238 (4th Cir. 2003)). Additionally, "[t]he legislative history of [§] 1692a(6) [of the FDCPA] indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Avila, 45 F. Supp. 3d at 120 (first alteration in original) (quoting Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985), modified on other grounds, 761 F.2d 237 (5th Cir. 1985)).

To bring a claim under the FDCPA, a plaintiff must establish that: "(1) the defendant is a 'debt collector'; (2) who took an action 'in connection with the collection of a[] debt'; and (3) the action violated the substantive proscriptions in those provisions." Lipscomb v. The Raddatz Law Firm, P.L.L.C., 109 F. Supp. 3d 251, 256 (D.D.C. 2015) (first quoting Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 384 (7th Cir. 2010)); and then quoting Muldrow v. EMC Mortg. Corp., 657 F. Supp. 2d 171, 174–75 (D.D.C. 2009)). Here, the plaintiff brings a claim under 15 U.S.C. § 1692j, which makes it unlawful to:

design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

15 U.S.C. § 1692j.  "Said differently, [§] 1692j makes it unlawful to deceive a debtor into thinking that someone else other than the creditor was participating in collection of the debt." Super v. Convergent Outsourcing, Inc., No. 22-cv-1274 (BAH), 2022 WL 16901973, at *4 (D.D.C. Nov. 11, 2022) (emphasis omitted).

Here, the plaintiff's claim of improper debt collection practices under the FDCPA appears to relate to a debt she directly owed to Chrysler Capital and "deceptive forms" allegedly furnished to her by Darcars, "misleading [her] to believe [that she] owe[d] a debt that [was] already paid."  Notice of Removal, Ex. A (Aff.) ¶ 2.  These claims, however, are not cognizable under the FDCPA because the defendant is not a "debt collector" as defined by this law.  As the defendant correctly argues, see Def.'s Mem. at 6–7 (citing Henson, 582 U.S. at 81–85), it is not a "debt collector" under the FDCPA and Supreme Court precedent because it is not a party that purchases debt and attempts to collect the debt for its own account, whereas the defendant "may indeed collect debts for its own account without triggering the statutory definition in dispute," Henson, 582 U.S. at 83.  The plaintiff also fails to show the existence of any form or document provided to her by the defendant that would "create the false belief[,]" 15 U.S.C. § 1692j, that the defendant was pretending to be a debt collector, which is necessary to state a claim under § 1692j, see generally Notice of Removal, Ex. A (Compl.); id., Ex. A (Aff.).  Therefore, because the plaintiff has not shown that the defendant is a debt collector within the meaning of the FDCPA, and because she has not demonstrated that the defendant "took an action in connection with the collection of a[] debt,[] and [ ] the action violated the substantive proscriptions in those

provisions[,]" Lipscomb, 109 F. Supp. 3d at 256 (internal quotation marks omitted), the plaintiff

has failed to state a claim under the FDCPA.  Accordingly, the Court must therefore dismiss this

claim.  Gore v. First Union Nat'l Bank, No. 01-cv-2166 (CKK), 2002 WL 34926295, at *4

(D.D.C. July 29, 2002) ("In order to state a claim under the FDCPA, [the p]laintiff must do more

than merely recite the statutory language contained in the FDCPA or state vague and conclusory

allegations that [the d]efendant[] violated the FDCPA.").

### 6.  The Plaintiff's TILA Claim

Next, the plaintiff alleges that "Darcars has knowledge of [ ] [the] Truth [in] Lending

Act[] [('TILA')] and has willfully violated [her] right[s]."  Notice of Removal, Ex. A (Aff.) ¶ 6.

In its motion to dismiss, the defendant argues that the plaintiff's allegations are "far too vague and

conclusory to support a TILA claim" and that the plaintiff does not offer any "specifics on how the

disclosures were incomplete, misleading, or difficult to understand[.]"  Def.'s Mem. at 10.

The TILA requires "accurate and meaningful disclosure of material terms to consumers

in credit transactions."  Solomon v. Falcone, 791 F. Supp. 2d 184, 188 (D.D.C. 2011) (citing 15

U.S.C. § 1601).

> The term "material disclosures" means the disclosure, as required by this
> subchapter, of the annual percentage rate, the method of determining the finance
> charge and the balance upon which a finance charge will be imposed, the amount
> of the finance charge, the amount to be financed, the total of payments, the number
> and amount of payments, the due dates or periods of payments scheduled to repay
> the indebtedness, and the disclosures required by section 1639(a) of this title.

15 U.S.C. § 1602(v).  "To state a claim under [the] TILA, a plaintiff must show either that she

did not receive the required disclosures or that the disclosures provided were not clear and

conspicuous."  Renford v. Cap. One Auto Fin., No. 21-cv-2382 (RC), 2022 WL 1211193, at *5

(D.D.C. Apr. 25, 2022) (quoting Thompson v. HSBC Bank USA, N.A., 850 F. Supp. 2d 269,

276 (D.D.C. 2012)).

Here, the plaintiff alleges that a finance charge was supposed to be "explained conspicuously[,]" Notice of Removal, Ex. A (Aff.) ¶ 3, and that "Darcars never explained the insurance section in the contract which is labeled optional[,]" id., Ex. A (Aff.) ¶ 4.  It is unclear from the plaintiff's Complaint and Affidavit whether these TILA claims relate to actions taken by defendant Chrysler Capital or, as to actions taken by Darcars, which the Court notes again, has not been identified as a defendant in this case.  See generally id., Ex. A (Compl.); id., Ex. A (Aff.). Moreover, the plaintiff has not alleged what disclosure or disclosures regarding the finance charge were not "explained conspicuously[,]" id., Ex. A (Aff.) ¶ 3, and does not reference a disclosure form beyond the "insurance section[,]" id., Ex. A (Aff.) ¶ 4, of her contract, which she identifies as "optional[,]" id., Ex. A (Aff.) ¶ 4.  The plaintiff has also failed to allege what disclosures required by the TILA were not provided to her.  See generally id., Ex. A (Compl.); id., Ex. A (Aff.).  Due to these omissions, the plaintiff has failed to allege a claim pursuant to the TILA, and accordingly, the Court concludes that it must dismiss the plaintiff's TILA claim.  See Thompson, 850 F. Supp. 2d at 277 (granting a motion to dismiss where the plaintiff "failed to allege what disclosures required by TILA she did not receive"); Travers v. Wells Fargo Bank, No. 09-cv-1061 (JR), 2010 WL 11595200, at *4 (D.D.C. May 5, 2010) (dismissing a TILA claim where the plaintiff "d[id] not offer a single citation to [the] TILA or [another r]egulation[,]" and offered no "specifics on how the disclosures were incomplete, misleading, or difficult to understand").

**7.   The Plaintiff's 15 U.S.C. § 1611 Claim**

Next, the plaintiff seeks to assert a claim under a criminal statute, 15 U.S.C. § 1611, for "criminal liability for willful and knowing . . . failure to comply with any requirements imposed under this sub chapter[.]"  Notice of Removal, Ex. A (Aff.) ¶ 6.  The defendant argues that this claim should be dismissed because the plaintiff has "no authority to enforce" this statute as it "does not grant a private right of action."  Def.'s Mem. at 4 n.5.

Pursuant to § 1611 of the TILA:

Whoever willfully and knowingly (1) gives false or inaccurate information or fails to provide information which he is required to disclose under the provisions of this subchapter or any regulation issued thereunder, (2) uses any chart or table authorized by the Bureau under section 1606 of this title in such a manner as to consistently understate the annual percentage rate determined under section 1606(a)(1)(A) of this title, or (3) otherwise fails to comply with any requirement imposed under this subchapter, shall be fined not more than $5,000 or imprisoned not more than one year, or both.

15 U.S.C. § 1611.

As a general rule, criminal statutes do not authorize a private cause of action.  See Keyter v. Bush, No. 03-cv-2496 (EGS), 2004 WL 3591125, at *2 (D.D.C. Aug. 6, 2004) (stating that the United States Attorney "shall prosecute for all offenses against the United States" (citing 28 U.S.C. § 547(1))); see also Cmty. for Creative Non-Violence v. Pierce, 786 F.2d 1199, 1201 (D.C. Cir. 1986) (stating that "[t]he power to decide when to investigate, and when to prosecute, lies at the core of the Executive's duty to see to the faithful execution of the laws").  This is because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  Ahuruonye v. U.S. Dep't of Interior, 312 F. Supp. 3d 1, 12 (D.D.C. 2018) (Walton, J.) (quoting Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)).  Therefore, to the extent the plaintiff, as a private citizen, seeks to enforce a criminal statute where "as a private party, [s]he cannot bring claims under criminal law or seek to compel the criminal investigation or prosecution of the defendant[,]" Volovets v. Clinton, No. 22-5207, 2022 WL 5239553, at *1 (D.C. Cir. Oct. 6, 2022) (per curiam), she "fail[s] to state a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6).  Accordingly, because the plaintiff cannot pursue this claim against the defendant under 15 U.S.C. § 1611, the Court must dismiss the claim.  See, e.g., Paul v. Am. Express, No. 22-cv-5728 (LTS), 2023 WL 35335, at *4 (S.D.N.Y. Jan. 3, 2023) (dismissing the pro se plaintiff's § 1611 claim for "fail[ing] to state a claim on which relief may

28

be granted" where "he apparently s[ought] to bring criminal charges against [the defendant in that case] for its alleged actions").

## C.      The Plaintiff's Breach of Contract Claim

Finally, the Court addresses the plaintiff's remaining claim which is liberally construed as alleging a breach of contract claim.  The defendant does not address whether the plaintiff can maintain this claim in its motion to dismiss, see generally Def.'s Mem., as the plaintiff only alleges that Darcars, again an entity that the plaintiff does not name as a defendant in her Complaint, has "breached the contract[,]" see Notice of Removal, Ex. A (Aff.) ¶ 5.  However, "[c]ourt[s] . . . ha[ve] the authority to dismiss a claim sua sponte for failure to state a claim pursuant to [Fed. R. Civ. P. 12(b)(6)] as long as a sufficient basis for the court's action is apparent from the plaintiff's pleading."  Tate v. Burke, 131 F.R.D. 363, 364 (D.D.C. 1990) (internal quotation marks omitted).

Here, the Court has "a sufficient basis[,]" Tate, 131 F.R.D. at 364, to dismiss the plaintiff's breach of contract claim sua sponte because it "is apparent from the plaintiff's pleading[,]" id., that she has not named Darcars as a defendant in this case, see Notice of Removal, Ex. A (Aff.) ¶ 5.  Because the plaintiff alleges Darcars has "breached the contract[,]" id., but failed to name it as a defendant, the Court has no basis to conclude that the plaintiff's "[C]omplaint [ ] contain[s] sufficient factual matter, [even if] accepted as true, to state a claim to relief that is plausible on its face[,]" Iqbal, 556 U.S. at 678 (internal quotation marks omitted).[10]

---

[10] Because the plaintiff failed to name Darcars as a defendant in her Complaint, she has similarly "fail[ed to] reasonably [ ] inform [an] adverse party of the asserted cause of action[,]" Brown v. Califano, 75 F.R.D. 497, 499 (D.D.C. 1977), which is required to "give fair notice to [an entity] of the claim being asserted, sufficient to prepare a responsive answer[ and] to prepare an adequate defense,"  Jones v. Biden, No. 24-cv-0526 (UNA), 2024 WL 2015303, at *1 (D.D.C. May 6, 2024); see also Fed. R. Civ. P. 8(a) (requiring that a complaint contain: "(1) a short and plain statement of the grounds for the court's jurisdiction[;] . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought[.]").

Therefore, the plaintiff's breach of contract claim, even "liberally construed[,]" <u>Erickson</u>, 551 U.S. at 94, as having been pleaded, fails to impute any alleged liability by Darcars to the named defendant, Chrysler Capital, <u>see</u> <u>Patton Boggs LLP v. Chevron Corp.</u>, 683 F.3d 397, 404 (D.C. Cir. 2012) (dismissing a complaint because it was unclear "who breached what obligation and how, and the manner in which the defendant[] intentionally caused that breach").  Accordingly, the Court must <u>sua sponte</u> dismiss the plaintiff's breach of contract claim "for failure to state a claim pursuant to [Fed. R. Civ. P. 12(b)(6).]" <u>Tate</u>, 131 F.R.D. at 364.

## IV.   CONCLUSION

For the foregoing reasons, the Court denies the plaintiff's motions to amend her Complaint and grants the defendant's motion to dismiss.

**SO ORDERED** this 17th day of July, 2024.[11]

REGGIE B. WALTON
United States District Judge

---

[11] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.